Filed 3/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re the Marriage of SANDRA and LEON E. SWAIN. _____ SANDRA SWAIN,      Respondent,      v. LEON E. SWAIN,      Appellant. | B284468 (Los Angeles County Super. Ct. No. MD031102) |

APPEAL from an order of the Superior Court of Los Angeles County.  Scott Nord, Commissioner.  Reversed.

Law Office of John Bigler and John C. Bigler for Appellant.

No appearance for Respondent.

_____

Appellant Leon E. Swain (Leon) appeals from a post-judgment order denying his motion to terminate spousal support for his former wife, Sandra Swain (Sandra).[1]  Sandra did not file any opposition and did not appear at the hearing on Leon's motion.  She filed an income and expense declaration prior to the hearing, but did not serve it on Leon.  Leon argued at the hearing that the trial court should not consider Sandra's declaration because he had no opportunity to cross-examine her about it.  The trial court initially agreed, but after the hearing relied on Sandra's declaration in making its ruling.

In its statement of decision, the trial court found that Leon had shown a material change in his circumstances based on evidence that he recently retired and that Sandra is now receiving a portion of his retirement income that is roughly equal to the $2,600 per month that Leon had been paying to her in support.  However, using Sandra's income and expense declaration to determine her needs, the trial court denied Leon's request to terminate support and instead decreased his monthly support obligation to $750.

We conclude that the trial court should not have considered Sandra's declaration without an opportunity for cross-examination.  Absent that declaration, the record contained no information about Sandra's current circumstances from which the trial court could make an assessment of the factors the trial court was required to consider in determining whether to continue spousal support.  Leon met his burden to show changed circumstances, and, absent evidence of a continuing need, the

---

[1]     We use the parties' first names for clarity.  No disrespect is intended.

2

trial court abused its discretion in continuing Leon's spousal support obligations. We therefore reverse.

## BACKGROUND

### 1. *The Parties' Marriage*

Leon and Sandra were married in July 1994 and separated in October 2005. They had no children together. The parties stipulated to a judgment of dissolution that was filed on February 13, 2007 (Stipulated Judgment).

The Stipulated Judgment provided for spousal support from Leon to Sandra in the amount of $2,600 per month based upon Leon's income at that time of $12,570 per month. The Stipulated Judgment stated that the court "finds that [Sandra] anticipates becoming self-supporting by January 2008. The Court finds that [Sandra] has agreed that if she is not self-supporting by January 2008 she will have an earning ability of at least $2,500 per month. The Court finds that [Sandra] agrees to use all reasonable efforts to obtain full-time employment and become self-supporting by January 2008."

### 2. *Leon's Requests to Modify or Terminate Spousal Support*

In 2008 and 2009 Leon made two unsuccessful attempts to modify or terminate his support obligation. In ruling on the 2009 motion, the trial court apparently imputed to Sandra the $2,500 monthly income specified in the Stipulated Judgment, but still declined to modify Leon's support obligation.

On December 30, 2016 Leon filed a new request for order (RFO) seeking termination of spousal support. Both Leon and Sandra were 56 years old at the time of the motion. The primary basis for Leon's request was that he was retiring and Sandra would therefore begin receiving an amount from her portion of

3

his retirement benefits that was close to the amount of spousal support Leon had been paying.

After one continuance, the RFO came on for hearing on May 2, 2017. Sandra was served with Leon's RFO papers in advance of the hearing. However, she did not appear and did not file any responsive declaration. The court ordered the hearing continued to June 13, 2017 and ordered the parties to file "updated Income and Expense Declarations (FL-150), no later than 10 court days prior to the . . . hearing date." The court ordered Leon to provide notice of the court's order, which he did by mail on May 4, 2017. Leon filed the notice on May 8, 2017.

Sandra did not appear for the June 13 hearing. However, she did comply with the court's order to file an updated Income and Expense Declaration (Declaration). She did not file any other responsive declaration or opposition to Leon's RFO.[2]

Leon's counsel saw Sandra's Declaration for the first time at the hearing. He objected to the Declaration, raising Leon's due process rights and his right to cross-examine Sandra. He also pointed out that Sandra was "not here to ask to put it into evidence." In response to his objections, the trial court stated "Okay. All right."

The trial court received into evidence a letter to Leon from the California Public Employees' Retirement System (CalPERS)

---

[2] Sandra also did not file a respondent's brief on this appeal. We nevertheless examine Leon's arguments in light of the record and the applicable law. (See Cal. Rules of Court, rule 8.220(a)(2); *Kennedy v. Eldridge* (2011) 201 Cal.App.4th 1197, 1203 ["we do not treat the failure to file a respondent's brief as a 'default' (i.e., an admission of error) but independently examine the record and reverse only if prejudicial error is found"].)

4

dated February 22, 2017. The letter stated that, effective December 31, 2016, Sandra's monthly allowance from Leon's service retirement was $2,630.68.

Leon testified to various health problems that he said contributed to his decision to retire from his position as the City Engineer for the City of Santa Monica. Those problems included sleep apnea, a hip replacement, pain in his other hip, and plantar fasciitis leading to pain and numbness in a foot. He testified that these conditions affected his ability to perform his job duties, which included walking around jobsites.

At the conclusion of the hearing, Leon's counsel asked whether the court intended to receive Sandra's Declaration. The court stated that "[i]t's filed. I have to keep it." Leon's counsel asked for clarification whether the court intended to receive the Declaration into evidence. The trial court responded, "I wasn't going to look at it."

### 3.    *The Trial Court's Statement of Decision*

The trial court filed its Statement of Decision on June 14, 2017. The court rejected Leon's argument that the reduction in his income due to his retirement was a material change in circumstances, finding that the amount of the reduction was not significant in light of the marital standard of living. The court also found that Leon retired voluntarily and that his medical issues did not affect his earning potential.

However, the trial court found that Leon "has demonstrated a material change in circumstances with respect to [Sandra's] income. Namely, [Sandra] is currently receiving her portion of the CalPER's retirement account in the amount of $2,630 per month. This was money which was not previously

used in calculating support for [Sandra]. This would be a change of circumstances warranting a modification."

Having found a material change in circumstances, the trial court then discussed the factors it was obligated to consider under Family Code section 4320.[3] The court found that the marital standard of living was $12,570 per month and Leon's income after retirement was $11,354 per month. The court calculated Sandra's income as $5,130.68 per month, consisting of "$2,500 imputed income" based upon the Stipulated Judgment and "$2,630.68 from CalPERS."

For Sandra's needs and her obligations and assets, the trial court relied on her Declaration. The court noted that Leon "sought to have the Court exclude this document." However, the court concluded that "[t]he document is submitted under the penalty of perjury and can be considered testimony by the Court. However, the weight that the Court gives the document will be limited given the fact that [Sandra] is not subject to cross-examination."

In addition to the factors identified in section 4320, the trial court also considered evidence that Leon's "new spouse has income of approximately $16,000 per month." The court observed that, "[t]hough this is not a basis for or [*sic*] denying a support modification, the Court can consider what expenses are reasonably based on the supported obligor's net monthly income."

---

[3] Subsequent undesignated statutory references are to the Family Code.

6

The court cited *In re Marriage of Romero* (2002) 99 Cal.App.4th 1436 in support of this finding.[4]

The court concluded that, after reviewing all "the evidence, tax consequences, the Parties['] marital standard of living both pre and post separation, the Court, after balancing the equities and requirements of Section 4320 as stated above, Orders that [Leon] shall pay to [Sandra] the sum of $750.00 per month . . . ." The court declined to make the order retroactive to the date the motion was filed, "as no evidence was presented as to when the income from CalPERS was received by [Sandra]. As such, the Court will assume that it began on the date of her filing of her Income and Expense Declaration."

## DISCUSSION

### 1. *The Legal Standard on a Motion to Terminate Spousal Support*

A party moving to modify or terminate spousal support has the burden to show a material change in circumstances. (*In re Marriage of West* (2007) 152 Cal.App.4th 240, 246.) A change in circumstances "means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs. It includes all factors affecting need and the ability to pay." (*Ibid.*) A supported spouse's receipt of additional income in the form of retirement benefits may constitute a change in circumstances. (*In re Marriage of Shimkus* (2016) 244 Cal.App.4th 1262, 1274-1276 (*Shimkus*).)

The trial court has broad discretion in deciding whether to modify a spousal support order based upon changed

---

[4] Leon argues on appeal that this finding was improper. In light of our disposition, we need not reach this issue.

7

circumstances. (*Shimkus, supra,* 244 Cal.App.4th at p. 1273.) In exercising its discretion, the trial court considers the same criteria set forth in section 4320 as it was obligated to consider in making the initial support order.[5] (*In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235.) However, a modification order must be "based on current facts and circumstances." (*In re Marriage of Sinks* (1988) 204 Cal.App.3d 586, 592 (*Sinks*).)

In exercising its discretion, a trial court must "follow established legal principles and base its findings on substantial evidence." (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.) "If the trial court conforms to these requirements its order

---

[5] Section 4320 requires the court to consider the following factors in ordering spousal support: (1) the extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage; (2) the extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties; (3) the ability of the supporting party to pay spousal support; (4) the needs of each party based on the marital standard of living; (5) the obligations and assets of each party; (6) the duration of the marriage; (7) the ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the other party; (8) the age and health of the parties; (9) any history of domestic violence; (10) the immediate and specific tax consequences; (11) the balance of hardships to each party; (12) the goal that the supported party be self-supporting within a reasonable period of time; (13) any criminal conviction of an abusive spouse; and (14) "[a]ny other factors the court determines are just and equitable." (§ 4320, subds. (a)-(n).)

8

will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (*Ibid.*). However, "a court abuses its discretion if its findings are wholly unsupported, since a consideration of the evidence 'is essential to a proper exercise of judicial discretion.' " (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197, quoting *Johns v. City of Los Angeles* (1978) 78 Cal.App.3d 983, 998.)

**2.      *The Trial Court Improperly Considered Sandra's Income and Expense Declaration Over Leon's Objection***

Leon objected to Sandra's Declaration on the ground that she was not present and he therefore could not cross-examine her about it. On appeal, Leon claims that the Declaration was inadmissible under section 217. Leon argues that section 217 requires live testimony on a post-judgment motion absent a stipulation or a showing of good cause. He also argues that the trial court's reliance on the Declaration after the court stated at the hearing that it would not consider it amounted to an improper independent investigation by the court.

We agree that section 217, when considered in light of its legislative history and the case law leading to its adoption, precludes reliance on inadmissible hearsay over a party's objection (subject to the good cause provision of section 217, subdivision (b)), at least where the party has no opportunity for cross-examination. The trial court therefore erred in considering the Declaration over Leon's objection.

9

### a. *Interpretation of section 217*

A trial court's decision about the admissibility of evidence is ordinarily reviewed under the abuse of discretion standard. However, when the issue is one of law, a de novo standard applies. (*Children's Hospital Central California v. Blue Cross of California* (2014) 226 Cal.App.4th 1260, 1277.) Here, the interpretation of section 217 is an issue of law, and we therefore apply the de novo standard of review.

Section 217 states that it applies to hearings "on any order to show cause or notice of motion brought pursuant to this code," (i.e., Family Code). It provides that, "absent a stipulation of the parties or a finding of good cause pursuant to subdivision (b), the court shall receive any live, competent testimony that is relevant and within the scope of the hearing." (*Id.*, subd. (a).)

On its face, the section addresses the *admissibility* of live testimony, not the *inadmissibility* of written testimony. However, the two issues are obviously related. The evidentiary rules concerning both issues must take account of the superior probative value of live testimony, which provides an opportunity to assess witness credibility and to understand and test the foundation for a witnesses' statements. "Ordinarily, written testimony is substantially less valuable for the purpose of evaluating credibility." (*Elkins v. Superior Court* (2007) 41 Cal.4th 1337, 1358 (*Elkins*).)

Because section 217 does not directly address the admissibility of written declarations, in interpreting the section we may "resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

10

### b. *History of the section*

The history of section 217 and the case law that preceded it reflect a concern for the value of live testimony rather than deciding substantive motions based upon competing declarations.

The Legislature adopted section 217 in response to our Supreme Court's holding in *Elkins*. In that case, the court considered a local procedure that required parties in family law cases to present their cases through written declarations. Live direct testimony was permitted only in " 'unusual circumstances,' although upon request parties were permitted to cross-examine declarants." (*Elkins, supra,* 41 Cal.4th at p. 1344.)

The petitioner in *Elkins* represented himself in a dissolution trial. He was effectively left without a case when the trial court concluded that the declaration he had filed failed to establish an evidentiary basis for most of the exhibits he wished to introduce and he was precluded by the local procedure from offering his own oral testimony at trial. (*Elkins, supra,* 41 Cal.4th at pp. 1344-1345.) The trial court consequently "divided the marital property substantially in the manner requested by petitioner's former spouse." (*Id.* at p. 1345.)

The petitioner filed a petition for writ of mandate or prohibition challenging the local procedure, which the Court of Appeal summarily denied. (*Elkins, supra,* 41 Cal.4th at p. 1350.) Our Supreme Court reversed. The court held that the local procedure was inconsistent with statutory provisions governing civil trials. The court concluded that, "pursuant to state law, marital dissolution trials proceed under the same general rules of procedure that govern other civil trials." (*Id.* at p. 1345.) Under those rules, "[w]ritten testimony in the form of a declaration constitutes hearsay and is subject to statutory provisions

11

governing the introduction of such evidence." (*Ibid.*) The court held that the local rule and order implementing the declaration procedure were "inconsistent with the hearsay rule to the extent they render written declarations admissible as a basis for decision in a contested marital dissolution trial." (*Id.* at p. 1356.)

In reaching that holding, the court distinguished a marital dissolution *trial* from motions that do not result in a judgment. The court noted that Code of Civil Procedure section 2009 provides a "statutory exception to the hearsay rule" that "permits courts to rely upon affidavits in certain motion matters." (*Elkins, supra,* 41 Cal.4th at p. 1355.)[6] The court cited *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, in which the court upheld a Los Angeles Superior Court policy of deciding long-cause post-judgment motions in family law matters on affidavits. The court in *Reifler* decided that Code of Civil Procedure section 2009 establishes a hearsay exception that provides trial courts with discretion to decide family law motions on affidavits so long as they do not involve fact-finding that results in a judgment. (*Reifler*, at pp. 484-485; *Elkins,* at p. 1355.)

Following *Elkins,* and at the suggestion of the Supreme Court in that case, the Judicial Council of California established the "Elkins Family Law Task Force" (Task Force) that undertook to "study and propose measures to assist trial courts in achieving efficiency and fairness in marital dissolution proceedings and to

---

[6]    "[E]xcept as otherwise provided by statute or rule adopted by the Judicial Council, 'the rules of practice and procedure applicable to civil actions generally . . . apply to, and constitute the rules of practice and procedure in, proceedings under [the Family Code].' " (*Elkins, supra,* 41 Cal.4th at p. 1354, quoting § 210.)

12

ensure access to justice for litigants, many of whom [were] self-represented." (*Elkins, supra,* 41 Cal.4th at p. 1369, fn. 20; Judicial Council of Cal., Elkins Family Law Task Force, Final Report and Recommendations (Apr. 2010) p. 9, at <http://www.courts.ca.gov/elkins.htm> [as of Mar. 26, 2018] (Elkins Report).) One of the Task Force's recommendations concerned the right to present live testimony at hearings.

The Task Force's final report noted that "*Reifler* has been widely interpreted to allow broad judicial discretion about whether or not to take live testimony at hearings on requests for orders or simply make decisions based solely on the supporting declarations." (Elkins Report, *supra*, p. 27.) However, many family law motions concern "substantive relief regarding the fundamental issues in controversy" and are therefore different from "purely procedural motions, such as those occurring in civil litigation." (*Id.* at pp. 27-28.) The Task Force concluded that the significance of many family law orders, including support orders, is "not necessarily determined by whether those orders were granted at a hearing before a trial, based upon a trial or agreed-upon judgment, or at a hearing to modify that judgment." (*Id.* at p. 28.) Consequently, the Task Force recommended a rule requiring that, "[a]t the hearing on any order to show cause or notice of motion (or request for order) brought pursuant to the Family Code, absent a stipulation of the parties or a finding of good cause, the judge must receive any live, competent testimony that is relevant and within the scope of the hearing and may ask questions of the parties." (*Id.* at pp. 28-29.)

The Legislature subsequently included this recommended language almost verbatim in the 2010 bill that established

13

section 217, subdivision (a).[7]  The legislative history of the section confirms that the Legislature intended to implement the Task Force recommendations.  (See Sen. Com. On Judiciary, Analysis of Assem. Bill No. 939 (2009-2010 Reg. Sess.) as amended June 17, 2010, p. 1 ["This bill would make various changes to family law proceedings thereby implementing a number of the legislative recommendations issued by the Elkins Family Law Task Force"].)

Based on this history, it is reasonable to conclude that, in enacting section 217, subdivision (a), the Legislature intended to abrogate the distinction the court made in *Elkins* between marital dissolution trials and family law motions that do not result in a judgment.  (See *Elkins, supra,* 41 Cal.4th at p. 1355.) This raises the question whether the holding in *Reifler* remains valid, or whether the exception to the hearsay rule in Code of Civil Procedure section 2009 no longer applies at all to the use of declarations for family law motions that seek "substantive relief

---

[7]     Unlike the Task Force's recommendation, section 217, subdivision (a) does not specifically refer to a hearing on a "request for order."  (Elkins Report, *supra*, p. 29.)  However, under California Rules of Court, rule 5.92, "[t]he term 'request for order' has the same meaning as the terms 'motion' or 'notice of motion' when they are used in the Code of Civil Procedure."  (*Id.*, (a)(1)(A).)  Moreover, California Rules of Court, rule 5.113, which describes the factors a court must consider in determining whether good cause exists to refuse to receive live testimony, specifically states that section 217 applies to a hearing on "any request for order brought under the Family Code."  (Cal. Rules of Court, rule 5.113(a).)  Thus, there is no question that section 217 applied to the hearing on Leon's request for an order terminating his spousal support obligation.

14

regarding the fundamental issues in controversy." (See Elkins Report, *supra*, at p. 27.)

Several cases have noted the effect of section 217 on the holding in *Elkins* without deciding the scope of that section's changes to the evidentiary rules applicable to post-judgment proceedings. In *Chalmers v. Hirschkop* (2013) 213 Cal.App.4th 289, the court affirmed the trial court's denial of a stepparent's motion to modify a visitation order. The stepparent argued that the trial court should have held an evidentiary hearing on her motion. The court noted that *Elkins* distinguished between the evidence admissible in pre-judgment and post-judgment proceedings, but also noted the stepparent's argument that "courts' holdings that evidentiary rulings do not apply to postjudgment motions were decided prior to the enactment of section 217." (*Id.* at p. 312.) The court did not resolve that issue, but simply noted that the stepparent did not have a right to examine the 10-year-old child under section 217 because the stepparent did not file a motion under section 217; she did not comply with "any of the requirements" of that section; and good cause existed to avoid requiring the child to testify under section 217, subdivision (b). (*Chalmers*, at p. 313.)

In *Shimkus*, *supra,* 244 Cal.App.4th 1262, the trial court granted an ex-husband's post-judgment motion to terminate spousal support he had been ordered to pay to his ex-wife. On appeal, the court rejected the ex-wife's claim that the trial court erred in failing to consider the declaration that she filed prior to the hearing on the motion. The ex-wife never moved to admit the declaration as an exhibit at the hearing. The court noted that "[s]ection 217 instructs that in a hearing on a motion or order to show cause, except under limited circumstances, i.e., the parties'

15

stipulation or good cause, live testimony is required.  (§ 217, subds. (a), (b).)  And the court made it clear the hearing would be conducted using live testimony." (*Id.* at p. 1270, fn. omitted.)

The court's holding in *Shimkus* was based on the ex-wife's failure to introduce her declaration into evidence.  (*Shimkus, supra,* 244 Cal.App.4th at p. 1271.)  While the court noted that "*Elkins* was decided before enactment of section 217, requiring live testimony for motions," the court also agreed that it "may be so" that "section 217 and Code of Civil Procedure section 2009 are not mutually exclusive." (*Id.,* at pp. 1270-1271.)

Thus, none of the published cases interpreting section 217 has squarely decided that section 217 completely abrogated the hearsay exception in Code of Civil Procedure section 2009 for substantive family law motions.

**c.** ***Sandra's Declaration was inadmissible under section 217.***

In this case, we also need not answer the general question whether section 217 makes written declarations submitted in connection with family law motions subject to the hearsay rule in every case.  We conclude that, at a minimum, the hearsay exception in Code of Civil Procedure section 2009 does not apply to a motion to modify a family law judgment where, as here, the opposing party seeks to exclude the declaration on the ground that he or she is unable to cross-examine the declarant.  In that situation, the opposing party's objection not only seeks to exclude hearsay evidence, but also amounts to an assertion of the party's right under section 217 to "live, competent testimony that is relevant and within the scope of the hearing." (*Id*., subd. (a).)  The opposing party's live testimony is necessary for cross-examination.

16

The lack of an opportunity to cross-examine the declarant deprives the opposing party of important evidence concerning the credibility of the declarant and the reliability of testimony in the declaration. The "chief purpose" of cross-examination is " 'to test the credibility, knowledge and recollection of the witness.' " (*Fost v. Superior Court* (2000) 80 Cal.App.4th 724, 733 (*Fost*), quoting 3 Witkin, Cal. Evidence (3d ed. 1986) § 1873, p. 1827.) The right to cross-examination "relates to the fundamental fairness of the proceedings." (*Fost,* at p. 733.)

In *Fost*, the court held that the remedy for a defense witness's refusal to answer a prosecutor's cross-examination questions on the basis of the newperson's "shield law" (Cal. Const., art. I, § 2, subd. (b); Evid. Code, § 1070) was to strike the witness's direct testimony. The court observed that, "[w]here a witness refuses to submit to cross-examination, or is unavailable for that purpose, the conventional remedy is to exclude the witness's testimony on direct." (*Fost, supra,* 80 Cal.App.4th at p. 735, citing 3 Witkin, Cal. Evidence, *supra*, § 1877, p. 1831.) The court concluded that this rule applies even in a criminal case in which the witness offers testimony helpful to the defense, noting that "[t]here are, in short, exceptionally few caveats to the proposition that the right to introduce evidence necessarily implicates the responsibility to permit it to be fairly tested." (*Fost,* at p. 736.)[8]

---

[8] In a criminal case, the remedy for a defense witness's refusal to answer cross-examination questions on the basis of privilege is for the defendant to seek an order compelling the witness to testify on cross-examination to avoid having the witness's direct testimony stricken. (See *Fost, supra,* 80 Cal.App.4th at pp. 737-738.)

17

The same rule applies here. Under section 217, absent a stipulation or a finding of good cause, Leon had a right to any live testimony that was "relevant and within the scope of the hearing." (§ 217, subd. (a).) Such live testimony included the opportunity to cross-examine Sandra concerning statements in her Declaration on which the trial court might rely. The proper remedy for the absence of an opportunity for cross-examination was to exclude her written declaration from evidence.

Leon objected to the admission of Sandra's declaration, and the trial court did not find good cause to consider the declaration in lieu of live testimony. To the contrary: the trial court gave every indication at the hearing that it intended *not* to consider the declaration in issuing its ruling. The court therefore erred in relying on the declaration in its Statement of Decision.[9]

3. ***In Light of the Uncontradicted Evidence Concerning Changed Circumstances, the Trial Court Abused Its Discretion in Denying Leon's Request to Terminate Spousal Support***

In the absence of Sandra's declaration, the only evidence before the trial court was Leon's testimony and exhibits showing the changed circumstances resulting from his retirement. The trial court found that Leon had demonstrated a material change in circumstances due to Sandra's receipt of her portion of the CalPERS retirement account. (See *Shimkus, supra,* 244 Cal.App.4th at p. 1276 [trial court did not err in finding that ex-

---

[9] In light of our holding that the Declaration was inadmissible, we need not consider Leon's argument that the trial court's consideration of that declaration after stating that it would not do so amounted to an improper independent judicial investigation.

18

wife's receipt of pension payments was a material change of circumstances].) That finding was supported by the letter from CalPERS that Leon introduced as an exhibit showing that Sandra had begun to receive $2,630.68 per month in retirement benefits.

In contrast to this evidence of Leon's changed circumstances, there was nothing in the record concerning Sandra's current financial situation, including her employment status and prospects. (See *Sinks, supra,* 204 Cal.App.3d at p. 592 [modification order must be based on current circumstances].) In particular, there was nothing in the record to weigh against Sandra's agreement in the Stipulated Judgment that she "anticipates becoming self-supporting by January 2008," which was over nine years before Leon brought his motion.[10]

On this record, it was error for the trial court to continue Leon's support obligation. The uncontradicted evidence established that Sandra had begun receiving more from her portion of Leon's retirement benefits than he had previously been paying in spousal support. (See *Sinks, supra,* 204 Cal.App.3d at pp. 591-592, fn. 2 [to avoid a "windfall" at the expense of the ex-husband, the trial court should have reduced the ex-husband's support obligation by the amount that his ex-wife had begun receiving from her portion of his retirement benefits].) No evidence supported the trial court's findings concerning Sandra's

[10] Indeed, as Leon emphasizes, there was nothing in the record before the trial court showing that Sandra even requested a continuation of spousal support.

19

current needs under section 4320, subdivision (d).[11]  Under these circumstances, the trial court abused its discretion in ordering any continuing spousal support.

---

[11]      The trial court's Statement of Decision was incorrect in referring to "testimony" other than Sandra's inadmissible income and expense declaration concerning her current needs.  Sandra did not testify and Leon's testimony did not include any information about Sandra's current financial situation.

# DISPOSITION

The trial court's order is reversed. Leon's spousal support obligation is terminated.

In the interests of justice Leon is responsible for his own costs on appeal, in light of Sandra's lack of opposition to Leon's motion below and on appeal.

CERTIFIED FOR PUBLICATION.

LUI, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.