Filed 3/22/23

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MICHELLE SEGAL,<br><br>    Plaintiff and Respondent,<br><br><br>    v.<br><br><br>PAUL FISHBEIN,<br><br>    Defendant and Appellant. | D080578<br><br><br><br><br>(Super. Ct. No. 22FL002401C) |


APPEAL from an order of the Superior Court of San Diego County, Alana W. Robinson, Judge.  Affirmed.

Bickford Blado & Botros, and Andrew J. Botros, for Defendant and Appellant.

Michelle Segal, in pro. per., for Plaintiff and Respondent.

I

INTRODUCTION

This appeal concerns precisely the kind of forum shopping that the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) (Fam.

Code, § 3400 et seq.)[1] was designed to prevent.  Unhappy with a Virginia court's order regarding the custody of his minor daughter, appellant Paul Fishbein sought to modify that order only one month later in *California* family court.  When the California court found it lacked jurisdiction under the UCCJEA to do so, Fishbein appealed.  We conclude the California court was correct:  the Virginia court that entered the governing child custody order had initial home state jurisdiction, and it never lost that jurisdiction.  Therefore, we affirm.

## II

## BACKGROUND

### A

### *2017 Virginia Custody Order*

When Fishbein and respondent Michelle Segal divorced in 2017, they entered an agreement in a Virginia court regarding child custody of their then five-year-old daughter, A.F.  Because of their employment with the United States State Department of Foreign Service, the custody agreement addressed how the parents would handle their rotating employment postings to various cities.  Specifically, Fishbein and Segal would alternate which parent's assigned city or post took priority, and they would seek work assignments in the same city until A.F. turned 18 years old.  Pursuant to the agreement, Fishbein had priority for the 2017 assignment, Segal had priority for the 2019 assignment, and Fishbein had priority for the 2021 assignment.  As a result, A.F. has lived in a number of locations with her parents, including Arlington, Virginia; Tokyo, Japan; Singapore; and San Diego, California.

---

[1]     Unless otherwise designated, all further statutory references are to the Family Code.

Most recently, A.F. moved to Singapore with Segal in 2019 and then, pursuant to the custody order, moved to San Diego with Fishbein in June 2021. So that she could be near A.F. during Fishbein's San Diego assignment, Segal also moved to San Diego in June or August of 2021.[2] She did so under a temporary remote working agreement with her employer, the Department of State, which is headquartered in Washington, D.C.

B

*December 2021 and February 2022 Virginia Custody Orders*

In December 2021, the Virginia court issued a custody order specifying that Fishbein and Segal would continue to alternate which of their assigned cities would take priority, beginning with Fishbein's assigned city of San Diego in August 2021 and then switching to Segal's assigned city for the next Foreign Service tour.

Segal moved for reconsideration of this custody order. At the hearing on Segal's motion, the Virginia court expressed that "the whole underlying basis for the Court's ruling that [A.F.] should reside with [Fishbein] in San Diego ha[d] lost its legs" because Fishbein was unable to produce any documentation showing that he did, in fact, have a position with the State Department allowing him to telework from San Diego. Accordingly, on February 8, 2022, the Virginia court granted Segal's motion to reconsider. The Virginia court modified the December 2021 custody order so that A.F. would remain in San Diego only until the end of her school year in June 2022, after which A.F. would be "permitted to relocate to the Northern Virginia area with [Segal] assuming [Segal] still has her job with the State

---

2    The parties' declarations are inconsistent about whether Segal moved to San Diego in June 2021, as Fishbein contends, or in August 2021, as Segal contends. This minor discrepancy, however, is not determinative of the issues on appeal.

Department and will be working at her current position, the UNICEF desk job in Washington, D.C."

## C

### *March and April 2022 California Custody Filings*

In early March 2022, Fishbein filed in the San Diego Superior Court (the California court) a notice of registration of the Virginia court's December 2021 custody order, modified on February 8, 2022 (the Virginia custody order). A couple of weeks later, he filed a request in the California court for an order *modifying* the Virginia custody order so that A.F. would permanently remain in his custody in San Diego. In support of his request for modification, Fishbein contended that A.F. was thriving in San Diego and that he could provide her the stability she needed because he planned to remain in San Diego for the remainder of her childhood.[3]

Segal responded by requesting a hearing on Fishbein's registration of the Virginia order in California. In her attached declaration, Segal alleged that Fishbein was attempting to forum shop, and that he was misrepresenting the current state of the parties and the proceedings in Virginia. She acknowledged that she and A.F. were living in California but contended that they were doing so only "temporarily" with plans to return to Virginia. She stated that she and A.F. had consistently lived in the Virginia area between all of Segal's international postings since 2012, and she planned to return to Virginia with A.F. at the end of the school year in June 2022, as permitted by the Virginia court's custody order. Segal further alleged that the Virginia court had continuing, exclusive jurisdiction under

---

[3]    Relatedly, Fishbein indicated to the California court that he left the Foreign Service at some point in approximately 2021 or 2022, but the record on appeal is unclear on the specific timing of his departure.

4

the UCCJEA and asked the California court to confer with the Virginia court about jurisdiction before entering any order modifying the Virginia custody order.

Because the California court had ordered the parties to participate in an upcoming custody mediation, Segal also applied ex parte to either cancel or reset the mediation and again asked that the California and Virginia courts confer under the UCCJEA.

D

*Jurisdictional Conference*

At the April 7, 2022 ex parte hearing, the California court considered the parties' arguments on jurisdiction under the UCCJEA. Fishbein's counsel alleged that because Fishbein, Segal, and A.F. all lived in California, the Virginia court "lost" jurisdiction and thus, a UCCJEA jurisdictional conference between the Virginia and California courts would be inappropriate. Fishbein's counsel further stated, "This [UCCJEA] argument may be more appropriately heard in conjunction with that [UCCJEA jurisdictional] conference instead of [on] an ex-parte basis. It may be appropriate for the court to swear the parties and get facts and evidence from each party prior to making a determination as to whether or not the UCCJEA conference is appropriate. That said, it's only if the court obviously feels that that is necessary at this point in time, but that would be my request. Not that we want to delay these proceedings."

The California court found that given the Virginia court's recent February 8, 2022 custody order and the parties' representations, it was unclear where jurisdiction existed under the UCCJEA. For that reason, it canceled the upcoming mediation and stated its intention to hold a UCCJEA conference with the Virginia court to discuss jurisdiction. The California

5

court then instructed the parties to return for a hearing on April 12, 2022, to discuss that conference. Fishbein's counsel asked to participate in the UCCJEA conference and to have it reported, but the California court declined, instead offering "the opportunity to argue to [the court] now any further facts and law before the conference." Fishbein's counsel responded that her arguments were what she had "already stated."

Before the April 12, 2022 hearing, Fishbein filed an opposition regarding Segal's objection to his registration of the Virginia court's custody order in which he again contended that California was the only state having jurisdiction over the custody dispute. In his opposition, Fishbein generally alleged that jurisdiction was proper in California because Segal no longer resided in, or had substantial connections to, Virginia.

At the April 12, 2022 hearing, the California court stated that it considered Fishbein's filing, and it gave the parties a summary of the California court's conference with the Virginia court. The California court explained that the two courts discussed the history of the litigation in Virginia and California, the evidentiary hearing in Virginia resulting in the February 2022 child custody order, and that the Virginia court's modified custody order allowed Segal and A.F. to return to Virginia at the end of the school year in June 2022. The courts agreed that the Virginia court was the home state court, and the Virginia court determined that it would "retain jurisdiction." For that reason, the California court found that it lacked jurisdiction to modify the Virginia custody order and vacated the associated upcoming hearing. The California court noted, however, that it would still move forward with the hearing on Fishbein's registration of the custody order.

6

Fishbein's counsel objected to the California court's jurisdictional ruling, contending that the UCCJEA conference should not have been held because there was purportedly no question about jurisdiction. Fishbein's counsel reiterated that "there is no dispute" that A.F. and Segal have lived in California since June 2021—arguments she noted that she previously made to the California court the prior week. Fishbein's counsel further objected to the UCCJEA conference because it was held outside the presence of counsel and the parties and was not reported.

Fishbein's counsel alleged that the Virginia court's lengthy history with the case did not allow it to "usurp jurisdiction" and, on that basis, she asked the California court to "swear the parties in and allow [her] to ask Ms. Segal three questions just to determine for the Court . . . whether or not UCCJEA jurisdiction was appropriately determined . . . ." The California court responded that there "absolutely was" a question about jurisdiction because the Virginia court had entered child custody orders as recently as February 2022, and the Virginia court had jurisdiction and retained jurisdiction until it relinquished it. The California court stated that it had exercised its discretion to exclude the parties from participating in the UCCJEA conference under section 3410, subdivision (b), but noted that it had still informed the parties about having the conference; gave the parties an opportunity to argue facts and law before making its decision, which Fishbein did both orally and in writing; and memorialized the conference in a minute order, which the court would provide to the parties that day.

After the hearing, the California court provided its signed minute order to the parties in which it again outlined what was discussed at the UCCJEA conference, including that the Virginia court "determined that Virginia will

7

retain jurisdiction" and that, "[t]herefore, California is without jurisdiction to modify Virginia's child custody orders or make child custody orders."[4]

Fishbein appeals.

## III

## DISCUSSION

### A

*Motion to Dismiss*

Before filing her respondent's brief, Segal filed a motion to dismiss this appeal on two grounds. First, she contends the appeal is moot because we summarily denied Fishbein's three writ petitions challenging orders related to the California court's jurisdictional finding, and the Supreme Court denied review. As Fishbein contends, however, a summarily denied writ does not preclude the filing of a subsequent appeal on res judicata grounds. (*Hoversten v. Superior Court of San Luis Obispo County* (1999) 74 Cal.App.4th 636, 640.) Accordingly, we deny Segal's motion to dismiss on this ground.

Second, Segal contends that, because she and A.F. are now living in Virginia and the Virginia court has issued orders while this appeal was pending, we are unable to grant any effectual relief and must dismiss the appeal as moot. But whether we can still grant effectual relief to Fishbein necessarily turns on whether the California family court properly concluded that California does not have jurisdiction over the custody dispute. Because Segal's motion to dismiss necessarily implicates a review of the record and

---

4     Before filing the present appeal, Fishbein also filed three writ petitions—all of which we summarily denied—challenging orders related to the California court's jurisdictional finding. One of those petitions challenged the April 12, 2022 ruling that Fishbein again challenges on appeal.

8

the merits of this appeal, we deferred ruling on it and instead will consider it together with the merits.

B

*The California Court Properly Deferred to the Virginia Court's Jurisdiction*

The parties agree that this appeal is governed by the UCCJEA. One of the "primary purposes" of the UCCJEA is "to encourage states to respect and enforce the prior custody determinations of other states, as well as to avoid competing jurisdiction and conflicting decisions." (*In re Marriage of Fernandez-Abin & Sanchez* (2011) 191 Cal.App.4th 1015, 1037.) To that end, "[t]he UCCJEA ensures that only one state has jurisdiction to make 'child custody determinations' " at any one time.[5] (*Ibid.*)

Nearly every state in the country, including California and Virginia, has adopted the UCCJEA, codified in California at Family Code section 3400 et seq. (*In re C.T.* (2002) 100 Cal.App.4th 101, 106 (*C.T.*).) It is well settled in California that the UCCJEA is "the exclusive method of determining the proper forum in custody disputes involving other jurisdictions." (*C.T.*, at p. 106; accord, *Ocegueda v. Perreira* (2015) 232 Cal.App.4th 1079, 1084.) Accordingly, when a California court is asked to make either an initial or a modified custody determination, UCCJEA jurisdictional requirements must be satisfied. (*In re Marriage of Arnold & Cully* (1990) 222 Cal.App.3d 499, 502 [under the UCCJA].)

Here, the parties do not dispute that Virginia assumed *initial* jurisdiction over their child custody dispute. (See § 3421.) Rather, they dispute whether the California court erred by deferring to the Virginia court's

---

[5] As relevant here, a " 'child custody determination' " is defined to include an order modifying a ruling previously made by a "court providing for the legal custody, physical custody, or visitation with respect to a child." (§ 3402, subd. (c).)

9

determination that Virginia would retain that jurisdiction. The crux of Fishbein's argument is that California "was required" to assume jurisdiction from Virginia because Segal admitted that she and A.F. had moved to California in approximately June 2021. Segal, however, contends that the California court correctly found it lacked jurisdiction because the Virginia court declined to cede its jurisdiction to California, and moreover, Segal's intent to return to Virginia in June 2022 meant that she still "presently resided" there. We agree with Segal and affirm.

The UCCJEA takes a strict " 'first in time' " approach to jurisdiction. (*W.M. v. V.A.* (2018) 30 Cal.App.5th 64, 72.) "In general, once the court of an 'appropriate state'—one having jurisdiction under section 3421, subdivision (a)—has made a child custody determination, 'that court obtains "exclusive, continuing jurisdiction." ' "[6] (*Ibid.*) Thus, when a California court is asked to make a custody determination but discovers that a child custody proceeding has already been commenced in another state having jurisdiction "substantially in accordance with" the UCCJEA,[7] the California court must stay its proceeding and consult with the other state court. (§ 3426.) If the out-of-state court having jurisdiction "does *not* determine that the [California court] is a more appropriate forum," then the California court "shall dismiss" the California custody proceeding. (§ 3426, subd. (b), italics added.)

---

[6] Under section 3421, a court "has jurisdiction to make an initial child custody determination" if it is the child's home state. (§ 3421, subd. (a)(1).)

[7] Because Virginia enacted the UCCJEA in 2001, Virginia is "in accordance with" the UCCJEA. (Va. Code Ann. §§ 20–146.1 to 20–146.38.)

10

Here, because a child custody proceeding had already been commenced[8] in Virginia, section 3426 required the California court to consult with the Virginia court about jurisdiction. (§ 3426, subd. (b).) Once the Virginia court determined that it would retain jurisdiction—that California was not "a more appropriate forum"—the California court was required to dismiss the proceeding.[9] (*Ibid.*) In other words, the California court was statutorily-required to *defer* to the Virginia court's decision not to cede jurisdiction to California. And that is precisely what the California court did. Accordingly, there was no error.

Fishbein fails to explain how, under the UCCJEA, the California court could have disregarded the Virginia court's decision to retain jurisdiction and instead proceeded to consider his request to modify the Virginia custody order. To the extent Fishbein contends the Virginia court's jurisdictional

---

[8] We reject Fishbein's unsupported contention that because a modification of custody proceeding had not been actively "pending" in Virginia since February 2022 at the time he filed in California court in March 2022, A.F.'s Virginia home state somehow changed to California. Fishbein's theory is undermined by the plain language of the UCCJEA. For example, the Virginia court did not "terminate or . . . stay[ ]" the custody proceeding because California was "a more convenient forum under section 3427." (See § 3426, subd. (a) [except in emergency jurisdiction cases, "a court of this state may not exercise its jurisdiction under this chapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced in a court of another state having jurisdiction substantially in conformity with this part, *unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under Section 3427*"] [italics added].)

[9] Although not at issue on appeal, we note that the California court did not dismiss the entire proceeding, which was filed to register the Virginia court's order. Rather, it vacated Fishbein's request for an order modifying the Virginia court's custody order.

11

determination is erroneous, his argument is with the *Virginia court*, not the California court.

We are also not persuaded by Fishbein's contention that, pursuant to sections 3422 and 3423, the Virginia court had "lost" its exclusive, continuing jurisdiction because Segal admitted that she and A.F. moved to California. Fishbein's theory is contrary to the plain language of the UCCJEA.

Section 3422, subdivision (a)(2) provides that, except in the case of emergency jurisdiction under section 3424 (which is not at issue here), "a court of this state that has made a child custody determination consistent with Section 3421 or 3423 has exclusive, continuing jurisdiction over the determination until . . . [¶] . . . [subdivision] (a)(2) [a] court of this state or a court of another state determines that the child [and all parents] do not presently reside in this state." Accordingly, Fishbein's theory fails at the outset. First, no California court "ha[d] made a child custody determination," as was required for section 3422, subdivision (a) to apply; only Virginia had made a child custody determination. Second, section 3422 "unambiguously gives the *decree* state sole power to decide whether jurisdiction has been lost on this basis." (*In re Marriage of Nurie* (2009) 176 Cal.App.4th 478, 510 (*Nurie*), italics added.) Thus, as the decree state, Virginia had this power, not California.

Fishbein fares no better under section 3423. Section 3423, subdivision (b) "complements" section 3422 by restricting the conditions under which one state may modify the custody orders of another state. (*Nurie, supra,* 176 Cal.App.4th at p. 498.) In relevant part, it similarly provides that, except in an emergency jurisdiction case, "a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under [section 3421,

12

subdivision (a)(1) or (a)(2)] *and* either of the following determinations is made: (a) The court of the other state determines it no longer has exclusive, continuing jurisdiction under Section 3422 or that a court of this state would be a more convenient forum under Section 3427, or (b) A court of this state or a court of the other state determines that the child [and all parents] *do not presently reside in the other state.*"[10] (§ 3423, subds. (a), (b), italics added.)

At every level of this statute, Fishbein again fails to show how the California court had jurisdiction to modify the Virginia custody order. As a threshold matter, California was not the "home state" of A.F. under either section 3421, subdivision (a)(1) or (a)(2). California was not A.F.'s home state "on the date of the commencement of the proceeding" in Virginia. (*Id.*, subd. (a)(1).) And Virginia, which had jurisdiction, did not "decline[ ] to exercise jurisdiction on the grounds that [California] is the more appropriate forum." (*Id.*, subd. (a)(2).)

Moreover, even considering Fishbein's contention under section 3423, subdivision (b) that the California court was required to "assume jurisdiction" by determining that A.F., Segal, and Fishbein "d[id] not presently reside in"

---

10      To the extent Fishbein contends that the Virginia court also lost jurisdiction via section 3423, subdivision (a), he is mistaken. Section 3423, subdivision (a) provides that a California court "may not modify a child custody determination made by a court of another state unless . . . [¶] . . . [subdivision](a) The court of the *other state* determines it no longer has exclusive, continuing jurisdiction under Section 3422 or that a court of this state would be a more convenient forum under Section 3427." (§ 3423, subd. (a), italics added.) As applied here, section 3423's plain language requires that the *Virginia court* have determined it no longer had exclusive, continuing jurisdiction or that California was a more convenient forum; this was not a finding left up to the California court. Accordingly, because the record is devoid of any such determination made by the Virginia court here, section 3423, subdivision (a) was not a path by which California could assume jurisdiction to modify the Virginia court's custody order.

13

Virginia, his argument misses the mark. (§ 3423, subd. (b).) The question central to Fishbein's theory is not whether Segal "resided" in California at the time he filed his California request to modify, but instead, whether Segal had *stopped* residing in Virginia. (See *Nurie*, *supra*, 176 Cal.App.4th at p. 499.) Segal had not. Rather, Segal's declaration filed with the California court stated that she never stopped residing in Virginia and was in California only "temporarily" with plans to return to Virginia with A.F. in June 2022. Segal alleged that she and A.F. were in California because of the Virginia court's custody order requiring A.F. to move there temporarily to live with Fishbein. And Segal explained that she moved to California so that she could be near A.F. during this custody arrangement.

Segal's characterization of her move to California as "temporary" is only further corroborated by the Virginia court's custody order. That order specified that the parties "shall seek to reside in the same city" so long as A.F. is a minor and that Segal could return to Virginia with A.F. at the end of A.F.'s school year in June 2022. Segal's additional explanation that she was living in California under a temporary remote agreement with her employer, the United States Department of State, which is headquartered in Washington, D.C., further validates her claimed intention to return to Virginia.

As Segal's declaration and the custody order establish, Segal still presently resided in Virginia, despite living in California. (See e.g., *Nurie*, *supra*, 176 Cal.App.4th, at p. 500 [For purposes of the UCCJEA, "a party may have more than one residence."].) Accordingly, even assuming Fishbein's section 3423, subdivision (b) theory was workable, Segal's temporary stay in California was not enough to defeat the Virginia court's jurisdiction.

Further, Fishbein's theory fails for yet another reason:  section 3422 and section 3423's plain language is clear that a *judicial determination* that all parties no longer resided in Virginia was required before Virginia could "lose" its continuing, exclusive jurisdiction.  (*Nurie, supra,* 176 Cal.App.4th at p. 500.)  "It is not the parties' departure itself that terminates the decree state's exclusive, continuing jurisdiction.  Rather, it is when a 'court . . . determines' that all parties have ceased residing there that jurisdiction is lost."  (*Id.* at pp. 500–501; § 3422, subd. (a)(2), § 3423, subd. (b).)  Without such a finding in either California or Virginia, "the statutory condition terminating jurisdiction simply ha[d] not occurred."  (*Nurie*, at p. 501.)

C

*Denying Fishbein's Request to Cross-examine Segal Was Not Prejudicial Error*

In the alternative, Fishbein complains that the California court's refusal to allow him to cross-examine Segal before the UCCJEA conference violated sections 3410 and 217.  We are not persuaded.

1

*Section 3410*

Under section 3410, the court has discretion whether to allow the parties to participate in the jurisdictional conference between the two state courts.  (§ 3410, subd. (b).)  If the parties are not permitted to attend the conference, "they must be given the opportunity to present facts and legal arguments before a decision on jurisdiction is made."  (*Ibid*.)  Finally, the court must make a written record of any conference and grant the parties access to that record.  (*Id.*, subd. (d).)

Here, we conclude that the California court fulfilled these requirements.  Both Fishbein and Segal presented evidence relevant to the

15

jurisdictional question, and the court permitted Fishbein to provide both written and oral argument, including at the April 7, 2022 hearing. Indeed, at the April 7, 2022 hearing, Fishbein's counsel argued that A.F. had lived in California since June 2021, that both Fishbein and Segal were residents of California, and that the Virginia court lost jurisdiction over the custody case because of the length of time that A.F. had not resided in Virginia. It is true that the California court conducted the jurisdictional conference with the Virginia court without the parties, but this was its right. And as required, the California court made a "written record" of the conference via a minute order, as well as described the conference to the parties at the April 12, 2022 hearing.[11]

Fishbein's reliance on *Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1314 (*Brewer*) is misplaced. *Brewer* considered a father's appeal from a California court order finding that a *different* state was a more convenient forum to make a child custody determination under section 3427. The father contended that the California court failed to give the parties an opportunity to present evidence, as required by section 3427.[12]

---

[11] Fishbein insinuates that the California court also erred by denying his request for a court reporter at the jurisdictional conference. We disagree. The California court's minute order outlining what occurred during the jurisdictional conference was sufficient. (See, e.g., *C.T.*, *supra*, 100 Cal.App.4th at pp. 111–112 [finding that section 3410 did not require the court to record the courts' jurisdictional conversation "verbatim" via tape recording or a reporter's transcript, but that compliance could be achieved by describing the conversations "in memoranda"].)

[12] Section 3427, subdivision (a) provides, "A court of this state that has jurisdiction under this part to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Subdivision (b) sets forth the factors the court

16

The *Brewer* court held that before determining California is an inconvenient forum to resolve custody issues, the trial court must first give the parties an opportunity to present evidence. (*Brewer*, *supra*, 218 Cal.App.4th at p. 1314.) Because the record lacked any evidence from which the trial court could have considered and applied the section 3427 factors, the *Brewer* court reversed. (*Ibid.*)

*Brewer*'s holding does not apply here, however, because a section 3427 inconvenient forum determination is not at issue. Nor was it required to be. "The issue of inconvenient forum *may* be raised upon motion of a party, the court's own motion, or request of another court." (§ 3427, subd. (a), italics added.) Neither the California court's minute order or its oral ruling indicates that the issue of inconvenient forum was ever raised by either court. (Cf. *Brewer*, *supra*, 218 Cal.App.4th at p. 1316 ["the [trial] court declined to exercise jurisdiction under section 3427 . . ."]. And as Fishbein admits, neither party ever raised the issue by motion or otherwise.[13] Furthermore, as Fishbein acknowledges, section 3427 "governs when *California* can release UCCJEA jurisdiction to another state on the grounds of inconvenient forum." (Italics added.) But, as discussed previously, California did not have the requisite initial jurisdiction to release; rather, Virginia did.

---

is required to consider before making such a finding and mandates that the court "allow the parties to submit information" on those factors.

[13]   Fishbein complains about the minute order's statement that, "[i]n light of the lengthy procedural history of the case in Virginia, Judge Kemler's familiarity with the same, and the provisions of the UCCJEA, Judge Kemler determined that Virginia will retain jurisdiction." We reject Fishbein's contention that this statement somehow constitutes a section 3427 determination.

## 2

### *Section 217*

Fishbein's reliance on section 217 is similarly unavailing.[14]  Section 217 provides that absent a stipulation of the parties or a finding of good cause, the court *shall* receive "any live, competent testimony that is relevant and within the scope of the hearing."  (*Id.*, subd. (a).)  This includes the right to cross-examine a party concerning statements made in a declaration.  (*Swain, supra*, 21 Cal.App.5th at p. 842.)  "In appropriate cases, a court may make a finding of good cause to refuse to receive live testimony and shall state its reasons for the finding on the record or in writing."  (§ 217, subd. (b).)

Fishbein contends we must reverse because the California court denied his request to cross-examine Segal without making a finding of good cause under section 217.  We disagree.  Even without a finding of good cause, the court is required to receive live testimony under section 217 *only if* that testimony is "relevant and within the scope of the hearing."  (*Id.*, subd. (a).)  But Fishbein failed to explain with specificity, either in the trial court below or in his briefing on appeal, how cross-examining Segal about her declaration would have related to the issues underlying the California court's jurisdictional ruling.  In the trial court, Fishbein claimed at most that cross-examining Segal was necessary "just to determine for the Court . . . whether or not the UCCJEA jurisdiction was appropriately determined . . . ."  This general statement, without more, is not enough.  (See e.g., *In re Marriage of*

---

14    "A trial court's decision about the admissibility of evidence is ordinarily reviewed under the abuse of discretion standard.  However, when the issue is one of law, a de novo standard applies. . . .  Here, the interpretation of section 217 is an issue of law, and we therefore apply the de novo standard of review."  (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 837 (*Swain*).)

*George & Deamon* (2019) 35 Cal.App.5th 476, 484 [court's failure to make a finding of good cause was not prejudicial where appellant "presented no explanation in the trial court or in her appellate briefing as to how her cross-examination of [the witness] would have related to any of the issues upon which the family court based its sanctions order"].)

Moreover, the relevant underlying facts appear to be undisputed. Fishbein, himself, acknowledged at the April 12, 2022 hearing that "there [wa]s no dispute" that Segal and A.F. had lived in California since June 2021. And he failed to suggest to the California court—either at the April 7 or April 12 hearings—that any facts *were* in dispute. Fishbein also does not dispute that Segal intended to return to Virginia at the end of A.F.'s school year. To the extent Fishbein contends the California court should not have *believed* that Segal intended to return to Virginia, he fails to explain what testimony he would have elicited to change this fact—particularly when it was corroborated by the Virginia court's order permitting this very custody arrangement.

We additionally observe that Fishbein waived his objection at the April 7, 2022 hearing when the California court gave him "the opportunity to argue . . . now any further facts and law before the [jurisdictional] conference," and his counsel responded only that her arguments were what she had "already stated." Further, Fishbein's request at the April 12, 2022 hearing—to ask Segal "three questions" pertaining to jurisdiction—did not necessarily make clear he was invoking his right to cross-examine Segal *about her declaration* pursuant to section 217. Nor did Fishbein object to the court's refusal to accept this live testimony or argue that such an objection would have been futile. (See e.g., *Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 687 ["Appellate courts will not consider objections that were not

19

presented to the trial court."]; *In re Marriage of Binette* (2018) 24 Cal.App.5th 1119, 1127 [In the context of section 217, "the right to live testimony may be forfeited."]; see also *In re the Marriage of Kerry* (1984) 158 Cal.App.3d 456, 466 [even if affidavit in support of motion is objectionable, failure to object "waives the defects, and the affidavit becomes competent evidence"].)

Fishbein's reliance on *Swain, supra,* 21 Cal.App.5th 830 does not change our conclusion. In *Swain*, the husband appealed from an order denying his motion to terminate spousal support. At the hearing, the husband objected to the wife's declaration, raising his due process rights and his right to cross-examine her. (*Id.* at p. 834.) He further pointed out that the wife "was 'not here to ask to put [her declaration] into evidence.' " (*Ibid.*) Nonetheless, the court relied on the wife's declaration in denying the husband's motion. (*Id.* at pp. 834–836.)

The appellate court concluded this was error and reversed, reasoning that "the hearsay exception in Code of Civil Procedure section 2009[15] does not apply to a motion to modify a family law judgment where . . . the opposing party seeks to exclude the declaration on the ground that he or she is unable to cross-examine the declarant. In that situation, the opposing party's objection not only seeks to exclude hearsay evidence, but also amounts to an assertion of the party's right under section 217 to 'live, competent testimony that is relevant and within the scope of the hearing.' " (*Swain, supra,* 21 Cal.App.5th at p. 841.)

---

15    Code of Civil Procedure section 2009 provides an exception to the hearsay rule by allowing a motion hearing to be decided based on declarations. (Code Civ. Proc., § 2009 ["An affidavit may be used . . . upon a motion, and in any other case expressly permitted by statute."].)

Although we agree with the *Swain* court's analysis of section 217, *Swain* is distinguishable.[16] In *Swain*, the husband specifically objected to the wife's declaration and sought to cross-examine her. Here, in contrast, Fishbein never objected to Segal's declaration. Nor did he make any unqualified request to cross-examine her *about* her declaration. Rather, Fishbein's request for live testimony was phrased as a request to ask Segal "three questions," without any explanation about what he hoped to elicit with those questions and without any suggestion that his questions were intended to test Segal's declaration under section 217.

Accordingly, for the previous reasons, we conclude the California court did not prejudicially err by deciding the jurisdictional question without receiving live testimony or making a good cause finding.

---

[16] Notably, the *Swain* court expressly did "not answer the general question whether section 217 makes written declarations submitted in connection with family law motions subject to the hearsay rule in every case." (*Swain*, *supra*, 21 Cal.App.5th at p. 841.)

IV

DISPOSITION

The order is affirmed.  Costs are awarded to respondent.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.

22