Filed 7/30/25  Kaniaru v. Kamau CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ALEXANDER KANIARU,<br><br>    Respondent,<br><br>v.<br><br>PEACE LEAH NJOKI KAMAU,<br><br>    Appellant. | A171808<br><br>(Marin County<br>Super. Ct. No. FL1503415) |

Peace Leah Njoki Kamau (Kamau) appeals from a family court order reducing the amount of spousal support payable by her former husband, Alexander Kaniaru (Kaniaru), from $1,500 to $600 per month starting September 2024 and terminating spousal support starting September 2028. Kamau contends that substantial evidence does not support the trial court's finding that Kaniaru showed a material change of circumstances to justify the modification, and also that the court erred in terminating spousal support because none of the conditions for termination set forth in the judgment of dissolution has been met. We will affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Judgment of Dissolution*

The parties' marriage lasted nine years and nine months, as reflected in the judgment of dissolution entered in 2011.  The parties' minor child was 10 years old at the time of the dissolution.

As required by the judgment, Kaniaru paid Kamau child support of $1,154 per month until 2019, when their child graduated from high school.

The judgment also required Kaniaru to pay Kamau spousal support of $1,500 per month.  The spousal support order was prepared on Judicial Council form FL-343.  The court checked the box on the form to provide that "[Kaniaru's] obligation to pay support will terminate on the death, remarriage, or registration of a new domestic partnership of [Kamau]." Another box was checked to provide a so-called "*Gavron* warning" that stated, "**NOTICE:**  It is the goal of this state that each party must make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320.  The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating support."  (See Fam. Code, § 4320, subd. (*l*) [circumstances to be considered by the court in ordering spousal support include "[t]he goal that the supported party shall be self-supporting within a reasonable period of time"];[1] see also *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705, 712 [a supported party must have been "made aware of the obligation to become self-supporting" before failure to become self-supporting is treated as a change in circumstances justifying modification of a support order].)

---

[1] Subsequent statutory references are to the Family Code unless otherwise stated.

Kaniaru made spousal support payments as ordered until September 2023.

B.    *Kamau's Requests for Orders*

In January 2024, Kamau filed a request that spousal support payments be withheld from Kaniaru's wages, based on her declaration that she had not received any payments since September 2023. The court issued an earnings assignment order a few days later.

In June 2024, Kamau filed a request for an order determining spousal support arrears of $8,250, which included $750 in interest, and setting a monthly liquidation payment of $750.[2] A hearing was set for September.

C.    *Kaniaru's Responsive Request for Termination of Spousal Support*

Kaniaru filed a responsive declaration opposing Kamau's request for order and requesting an order terminating spousal support. In support of his request, Kaniaru stated that he was in financial difficulties because of the expenses he incurred for the care of his severely autistic six-year-old child and that he had to finance family expenses through credit card debt because of a lack of funds left after paying spousal support to Kamau. He stated that his autistic child needed extensive services and care, and he was unable to pay for necessary speech therapy because of the spousal support payments. He further stated he had paid child support and spousal support to Kamau beginning in 2011 "with great burden" and that it was "incredibly difficult for me to continue paying the alimony, and getting deeper into debt, and we were married for 9 [years] and 9 months but I have been forced to pay for 14 years now." He noted that Kamau no longer had minor children, that she had been advised in the divorce proceedings to make efforts to secure employment, and that she had attended the University of California at Davis (UC Davis).

_____

[2] Subsequent dates are in 2024 unless otherwise stated.

3

In his accompanying income and expense declaration Kaniaru stated that he lived with his spouse and two children, aged 11 and 6; his average gross monthly salary was $10,000; and his estimated average monthly expenses, including payment toward his debts but not including spousal support, were $8,695.

D.    *Court Orders Payment of Arrears*

At the September hearing, the trial court found that Kaniaru owed Kamau back spousal support in the amount of $8,000, including $500 in interest, and ordered him to pay $400 per month to make up that deficit starting in October.

Because Kamau had not been served with Kaniaru's request to terminate spousal support until the hearing, the court set a date for Kamau to file and serve her response and scheduled a further hearing to consider Kaniaru's request.

E.    *Kamau's Response to Request to Terminate Support*

In her responsive declaration, Kamau asked the court to maintain the existing spousal support order. Kamau stated she needed spousal support because her income did not suffice to meet her basic living expenses, and that in addition to those expenses she was responsible for debt she accrued in raising the parties' child, for her student loans, and for debt she took on because of Kaniaru's missed spousal support payments. She stated that although she had "diligently and consistently worked hard to establish an alternative, reliable source of income," she had not been able to do so. She had almost completed her bachelor's degree at UC Davis when she became the primary caregiver for the parties' child, which negatively affected her ability to complete her bachelor's degree, develop skills, and establish a career. She stated that most jobs at her current skill level did not "provide a

4

sufficient or sustainable income," and required more physical strength than she had, as reflected by the fact that she was terminated from a job in June after her employer informed her that the work was too physically demanding for her.

Kamau reported in her income and expense declaration that she lived alone and her gross monthly salary was $3,440,[3] in addition to which she received $1,500 in spousal support. Her estimated monthly expenses, including payment toward her debts, were about $5,000.

F. *Hearing and Ruling*

At the hearing on Kaniaru's request to terminate spousal support, Kamau confirmed that she still held the job she had started in August. She said that although she was working 40 hours per week and being paid $21.50 per hour, the job did not provide enough to meet her monthly expenses, including transportation between Marin County and San Francisco. Kamau argued that because she had raised the parties' child on her own, she had not been able to build a career, although she was willing and able to work.

Kaniaru argued that Kamau currently had no dependents, and that the parties' adult child was in New York and was working, so there was no reason Kamau could not look for a better job to support herself.

In the course of the hearing, after Kamau stated that she had been relying on the spousal support payments to pay her expenses, and that although she currently had work, she did not know how long the job would last, the court stated, "Ma'am, this is a hard case because you didn't work, . . . . But you're working and you—I know you didn't graduate from

---

[3] At the September hearing, Kamau reported that in mid-August she had taken a job in San Francisco; that she was "in training"; and that she was being paid $21.50 per hour while being trained.

5

Davis, but you have an education there, and I think that you're able to contribute full-time—" The court observed that Kaniaru "has a child who has autism," who required Kaniaru's financial support.

The court took the matter under submission and later issued its written findings and order reducing the support payment from $1,500 to $600 per month "[f]rom September 2024," and ending payments "[f]rom September 2028." The court found that Kaniaru had shown a material change of circumstances since the existing support order was entered, consisting of a material decrease in his ability to pay, Kamau's failure to diligently attempt to become self-supporting, and Kamau's failure to become self-supporting within a reasonable period of time. The court discussed the factors set forth in section 4320, finding that Kamau would likely be working for an hourly wage, and that the job market for such work was strong. The court also found that Kaniaru had a severely autistic child who required care and financial support. The court concluded, "After reviewing all of the evidence, tax consequences, the Parties' marital standard of living both pre and post-separation, the Court, after balancing the equities and requirements of Section 4320 as stated above, the court orders that [Kamau's] spousal support payment shall be reduced over time until it reduces to zero based on the following schedule (See *In re Marriage of Richmond* (1980) 105 Cal.App.3d 352, 356 ['a spousal support order may in a proper case, be fashioned so as to encourage such supportive self-reliance, and to discourage delay in preparation for or in seeking, or refusal of, available employment'].)" The court then set out the schedule we described above.

Kamau timely appealed.

6

**DISCUSSION**

A.  *Applicable Law and Standard of Review*

The modification or termination of a spousal support order requires a material change in circumstances.  (*In re Marriage of Swain* (2018) 21 Cal.App.5th 830, 836.)  "A change in circumstances 'means a reduction or increase in the supporting spouse's ability to pay and/or an increase or decrease in the supported spouse's needs.  It includes all factors affecting need and the ability to pay.' " (*Ibid.*; see § 4320 [setting forth the circumstances a trial court is to consider in ordering spousal support].)

We review an order modifying a spousal support award for abuse of discretion.  (*In re Marriage of Schmir* (2005) 134 Cal.App.4th 43, 47.)  "In exercising its discretion the trial court must follow established legal principles and base its findings on substantial evidence.  If the trial court conforms to these requirements its order will be upheld whether or not the appellate court agrees with it or would make the same order if it were a trial court." (*Ibid.*, fn. omitted.)  When we review findings for substantial evidence, " ' "our review is limited to a determination whether there is any substantial evidence, contradicted or uncontradicted, that supports the finding.  [Citation.]  In so reviewing, all conflicts must be resolved in favor of [the prevailing party] and all legitimate and reasonable inferences must be indulged to uphold the finding." ' " (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 436.)  "We do 'not reweigh the evidence, evaluate the credibility of witnesses or indulge in inferences contrary to the findings of the trial court.' " (*Ibid.*)  Further, we do not consider whether substantial evidence might support a finding different from the trial court's, but only whether substantial evidence, contradicted or uncontradicted, supports the

7

findings that were made. (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581-582 (*Schmidt*).)

B.     *Evidence of Change in Circumstances*

Kamau argues that there is no substantial evidence of a material decrease in Kaniaru's ability to pay spousal support and no substantial evidence that she failed to diligently attempt to become self-supporting.

1.     *Decrease in Kaniaru's Ability to Pay*

In arguing that there is no substantial evidence to support the court's finding of a material decrease in Kaniaru's ability to pay, Kamau's primary contention is that there has been an increase in Kaniaru's income since the previous support order was entered in 2011. Kamau points to evidence that in 2011, Kaniaru was earning about $8,100 per month, but as of August 2024 he was earning $10,000 per month. However, Kamau does not discuss the evidence that supports the findings made by the trial court, including evidence that Kaniaru's ability to pay has decreased since the original support order was issued in 2011 as a result of his having a severely autistic child who requires care and financial support. Kaniaru's need to pay for the care of his severely autistic child is substantial evidence that supports the trial court's finding that his ability to pay spousal support has materially decreased.

In claiming that Kaniaru's income has increased Kamau makes two additional points, which we discuss in turn.

First, Kamau observes that Kaniaru's income and expense declaration shows that his current spouse pays some of their household expenses. To the extent Kamau contends that the trial court abused its discretion by failing to consider this fact, Kamau has not shown error because of the statutory provision that "[t]he income of a supporting spouse's subsequent spouse . . .

8

shall not be considered when . . . modifying spousal support." (§ 4323, subd. (b).) Kamau does not acknowledge this statute. Although case law holds that to effectuate the intent of the Legislature as expressed in section 4323, subdivision (b), while avoiding absurd results, a court must attribute to the supporting spouse reasonable expenses based on that spouse's income and must "exercise [its] discretion based on all the available facts" (*In re Marriage of Romero* (2002) 99 Cal.App.4th 1436, 1445-1446), Kamau has not argued that the trial court failed to attribute reasonable expenses to Kaniaru based on his income. Moreover, because Kamau does not discuss all the evidence before the trial court, including evidence concerning Kaniaru's autistic child, she has not shown that the trial court failed to exercise its discretion based on all the available facts.

Second, Kamau contends that Kaniaru's income and expense declaration failed to include information about his income from a house in Kenya, which was considered during the dissolution proceeding. Any claims of inaccuracies or omissions in an income and expense declaration must be raised in the first instance in the trial court. (*Kevin Q. v. Lauren W.* (2011) 195 Cal.App.4th 633, 644.) Because Kamau did not raise this issue below, Kaniaru "had no chance to amend, correct, expand, or explain his declaration nor did the trial court have an opportunity to consider [Kamau's] allegations." (*Ibid.*) Therefore we decline to consider the issue in this appeal. (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [as a general matter, "issues raised for the first time on appeal which were not litigated in the trial court are waived"].)

2.   *Kamau's Efforts to Become Self-Supporting*

Kamau contends there is no evidence to support the trial court's finding that she failed to diligently attempt to become self-supporting. But rather

9

than discussing all the evidence and arguing that it does not support the trial court's finding, Kamau focuses on evidence to support a contrary finding, specifically, the fact that she informed that court in her declaration that she had "diligently, and consistently, worked hard to establish an alternative, reliable source of income." The question before us, however, is whether evidence supports the finding actually made by the trial court (*Schmidt*, *supra*, 44 Cal.App.5th at pp. 581-582), and we conclude that there is.

Kamau does not dispute that substantial evidence supports the trial court's finding that she was made aware of the goal that she become self-supporting and given a reasonable opportunity to achieve that goal, but has not achieved it after the passage of 13 years. There is evidence that although Kamau was the primary caregiver for the parties' child, which negatively affected her ability to develop marketable skills and become self-supporting, the child graduated from high school in 2019, five years before the court issued its order reducing spousal support. This evidence, taken together with the trial court's undisputed findings that although Kamau will likely need to find work paying an hourly rate, the job market is strong and jobs paying hourly wages are plentiful, supports an inference that Kamau has not diligently attempted to become self-supporting.

In arguing the issue of whether substantial evidence supports the trial court's finding that Kamau has not diligently sought to become self-supporting, Kamau raises two additional arguments.

First, pointing to evidence that her current job is not enough to pay her living expenses, Kamau argues that the trial court erred by failing to give any weight to her evidence of continuing need, which was the error made by the trial court in *In re Marriage of Beust* (1994) 23 Cal.App.4th 24, 30. The record does not support this argument. The trial court explicitly considered

10

Kamau's needs in its order and reached its findings "pursuant to testimony and evidence and an Income and Expense Declaration" that she filed with the court on September 20, 2024. Further, the court stated that it had "considered and weighed all of the [section] 4320 circumstances in determining the appropriate amount and duration of spousal support and balanced the hardships to each party." (See § 4320, subd. (d) [requiring court to consider "[t]he needs of each party based on the standard of living established during the marriage"].) The trial court here weighed the evidence; we will not reweigh it.

Second, relying on *In re Marriage of Prietsch and Calhoun* (1987) 190 Cal.App.3d 645, Kamau argues that the trial court's order terminating spousal support in the future was improperly "based on speculative expectations rather than on reasonable inferences drawn from the evidence presented," and therefore constitutes an abuse of discretion. (*Id.* at p. 656.) This argument is not persuasive because Kamau does not discuss or acknowledge the inferences supporting the trial court's order that can be drawn from the evidence before the court and the court's undisputed findings. For example, the court's finding of a strong job market for hourly workers, and Kamau's testimony that she is "very willing and able to work" support the inference that Kamau can be self-supporting by September 2028, when spousal support payments will terminate.

C.     *Conditions for Terminating Spousal Support*

Kamau argues that the trial court erred in modifying and terminating spousal support because none of the conditions specified in the judgment for termination of support have occurred. Kamau correctly states that the judgment of dissolution provides that Kaniaru's obligation to pay support terminates upon Kamau's death, remarriage, or registration of a new

11

domestic partnership. But nothing in the judgment states that these are the *only* conditions that justify termination of spousal support payments. To the contrary, the judgment is clear that other considerations may be relevant: for example, it included a *Gavron* warning, which stated that "one of the factors" a court may consider in modifying or terminating spousal support is the supported spouse's failure to make good faith efforts to become self-supporting. In addition, as a general matter the trial court has statutory authority to modify or terminate a spousal support order "at any time as the court determines to be necessary." (§ 3651, subd. (a); see also § 4336, subd. (c) [court has "discretion to terminate spousal support . . . on a showing of changed circumstances"].) Thus, the fact that Kamau has not remarried, or registered a new domestic partnership does not prevent the court from modifying or terminating spousal support.

## DISPOSITION

The challenged order is affirmed. The parties shall bear their own costs, if any, of appeal.

12

_____
Miller, J.

WE CONCUR:


_____
Richman, Acting P. J.


_____
Desautels, J.


A171808, *Kaniaru v. Kamau*