Filed 6/29/26  Bayer v. Guttbinder CA1/2
Opinion following rehearing

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EVE BAYER,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>STEVEN GUTTBINDER,<br><br>     Defendant and Appellant. | A175180<br><br>(Alameda County Super. Ct. No. HF19029664) |

Steven Guttbinder and Eve Bayer were once married and have one child.  Bayer petitioned for dissolution in 2019, and the family court entered a judgment of dissolution in 2021.  The parties have been litigating ongoing custody issues in family court and this court.  This particular appeal by Guttbinder is from the family court's Findings and Order After Hearing filed on June 27, 2025 (the challenged order).[1]  Guttbinder contends that the family court erred in imposing sanctions against him and by admitting and

---

[1] There are other appeals pending, including case number A174545. And there have been writs in case numbers A174763 and A174883.

1

relying on a letter from the parties' parenting coordinator announcing she was terminating her services. We affirm.[2]

## BACKGROUND

In December 2024, Guttbinder filed an Ex Parte Request for Order. Guttbinder requested changes to child custody and visitation and the removal of Jamie Duddy as parenting coordinator.

Bayer opposed the Ex Parte Request for Order. In her responsive declaration to Guttbinder's Ex Parte Request for Order, Bayer checked the box next to "ATTORNEY'S FEES AND COSTS" and noted: "(FC §271 SANCTIONS RESERVED)," and in her accompanying memorandum of points and authorities, Bayer reiterated the point.[3] Bayer filed an updated statement of issues on April 1, 2025, and once again stated she had "sought reservation over § 271 sanctions for [Guttbinder's] unsupported and harmful [Request for Order]," adding that, at the hearing, she would seek the fees she had "incurred since December 2024 to defend herself against his [Request for Order], totaling $25,386."

In his reply to Bayer's update, Guttbinder requested that the family court deny Bayer's request for attorney's fees and instead award him attorney's fees and costs as sanctions against Bayer pursuant to section 271.

After the hearing date was continued, in an update filed on May 6, 2025, Bayer "reiterate[d] the requests she made in her April 1, 2025 pleading, including . . . her request for $25,386 in Section 271 fees to oppose [Guttbinder]'s [Request for Order]."

---

[2] On June 12, 2026, Guttbinder filed a motion to augment and/or correct the record and a petition for rehearing. We granted his motion, and his petition for rehearing.

[3] All undesignated statutory references are to the Family Code.

2

On May 13, 2025, the family court held a hearing on Guttbinder's Ex Parte Request for Order. The hearing transcript runs 17 pages. The family court asked Guttbinder about his financial situation. Guttbinder stated that he had about $20,000 of cash in his account, and that his gross monthly income was "zero" because he did event work, had just finished a job, and was "in between jobs."

The family court questioned Guttbinder about allegations in Bayer's papers that he had made inappropriate statements to their child. Guttbinder admitted that he told their child: "I'm doing everything I can. I'm spending more money to see you more and one day you'll understand why this whole court thing is a thing." Guttbinder also admitted that, in February, he told their child: "I'm pretty sure I'll be at your [birthday] party. I just have to triple check some things with Mommy and her lawyer." The family court observed: "[E]ven when it's been established that please don't talk about the court case . . . or attorneys . . . to the child, those things are still happening. . . . [I]t's still a problem. . . . [A] child shouldn't have to hear things like this and I need to see improvements in that regard." The family court also stated: "What would he be saying if there was no [visitation] supervisor there. I'd be concerned about that."

The family court concluded that it was "not going to order a step-up [in parenting time] . . . at this time," although it later noted: "I'm not saying you could never have a step-up in time, but from what I'm seeing right now there are still problems here that aren't addressed and I'm concerned about increasing time or making it unsupervised."[4]

---

[4] The family court made other observations in connection with custody and visitation. For example, the family court stated: "[T]here's evidence of issues that are still not being resolved. [¶] Many of the issues identified by Dr. Chambers still appear to remain[:] deflecting or reassigning blame,

3

Near the outset of the hearing, when the family court stated that it had reviewed the letter in which Jamie Duddy withdrew as parenting coordinator, Guttbinder objected. Asked for the basis of his objection, Guttbinder replied: "On the fact that it was supplied yesterday." The family court responded: "[I]t's not like this was provided two months ago and it was just withheld and nobody saw it. The letter was to both of you at the same time. You both had equal access to it and it was recently drafted and it's relevant. So, frankly, I'm glad I saw it." When Guttbinder asked for clarification if the court was "talking about the one that happened on May 12th that occurred after they withdrew her testimony on May 7th," the family court replied: "The letter where she says that she's no longer working with this family and why." When the family court stated that it did not understand his objection, Guttbinder stated: "The fact that I did not have a chance to review it and rebut the fact that most of it is not true. [¶] . . . [¶] . . . For one, it was submitted directly to not just me and [Bayer], but also to . . . [Bayer's] counsel and not to my counsel without any knowledge of them not being my counsel anymore which I think is very interesting in terms of timing." "[T]he whole entire letter starts off as a financial dispute which already makes it very biased. The fact that the letter came just days after [Bayer] no longer require[s] her testimony, I think is just interesting timing in terms of providing this to the Court. It seems like in the 11th hour: Let's just get this in and let's not have [me] have the ability to cross-examine her in front of you. [¶] And it terminates the letter also having her . . . back-door

---

engaging in conflict all the time, justifying wrongdoing. I see [it] in [Guttbinder's] own papers. I see it in his responses in his testimony today. It's [Bayer's] fault for things. It's ineffective counselors for years. . . . It's the [parenting coordinator's] fault."

ability to say . . . I don't think that he should move up in the plan whatsoever having never spoken to any of the [visitation] supervisors or [been] given the reports [of] any of those [visitation] supervisors and also not taking into account any of the work that I've been doing. It's a completely a one-sided letter."[5]

The family court then granted Guttbinder's request to remove Duddy as parenting coordinator. The family court stated: "[T]he reason I'm taking Ms. Duddy out of the equation is, number one, she seems to have terminated her services anyway and I can't force her to be in there if she's not being paid and no one's showing up. But, you know, Mr. Guttbinder also doesn't want to work with her anymore and doesn't go to the appointments anymore and didn't allow her to talk to his counsel. And if I had ordered that both parties continue to work with her or a different [parenting coordinator], I could see the same thing happening. . . . Co-parenting counseling has been attempted numerous times and isn't working anymore."

At the end of the hearing, the family court stated: "[T]here's a request for sanctions. [¶] And, frankly, I think sanctions are warranted." The family court noted: "[T]his should not had been filed as an ex parte. . . . [T]hat's not what emergency ex parte requests are for. . . . It resulted in additional pleadings that didn't really have to be filed in this case as well." The family court concluded: "I'm going to order [sanctions] in the amount of $5000 . . . to be paid . . . directly to . . . [Bayer's] counsel. [¶] . . . [E]veryone's got their

_____

[5] Guttbinder represented himself at the May 13, 2025 hearing and conceded in response to a comment by the family court that his counsel had substituted out on May 2 and was no longer his counsel when Duddy sent the letter to the parties and Bayer's counsel.

positions. I don't find them to be completely unreasonable so I'm not going to order additional sanctions on top of that."

The family court issued a written order, filed on June 27, 2025. Among other things, and as stated at the hearing, the family court granted Guttbinder's request to remove Jamie Duddy as parenting coordinator (and Duddy's request to withdraw), denied Guttbinder's request for unsupervised parenting time, and did not order a custodial "step-up." The family court ordered Guttbinder to pay $5,000 in attorney fees to Bayer's counsel's office, and denied Bayer's request for additional sanctions. The court found that sanctions were "warranted in this matter, as the issues were not emergencies and therefore not needed on an ex parte basis," and "a custodial step-up plan not going up quickly enough is not considered an emergency."

Guttbinder appealed.

## DISCUSSION

### A. *Principles of Appellate Practice*

" 'A judgment or order of the lower court is presumed correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "[T]he burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 (*Jameson*); *Contra Costa County v. Pinole Point Properties, LLC* (2015) 235 Cal.App.4th 914, 925 (*Contra Costa County*) ["The appellant has the burden of demonstrating prejudicial error based on an adequate record and appropriate legal argument"].) " 'In

6

the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court. . . .' [Citation.]" (*Jameson, supra,* 5 Cal.5th at p. 609.)

" 'As an aspect of the presumption that judicial duty is properly performed [Evid. Code, § 664], we presume . . . that the court knows and applies the correct statutory and case law [citation] and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process.' [Citation.]" (*In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1526 (*Davenport*).) "Stated another way, a trial court is presumed to ignore material it knows is incompetent, irrelevant, or inadmissible." (*Ibid.*) "Only proof that the evidence actually figured in the court's decision will overcome these presumptions." (*Ibid.*)

These principles apply even when parties represent themselves, as Guttbinder and Bayer do here on appeal, because "[w]e treat a party who represents himself on appeal as we would any other party or attorney." (See *Denny v. Arntz* (2020) 55 Cal.App.5th 914, 920.)

B.     *Analysis*

   1.     <u>Sanctions</u>

We cannot find that the family court erred in imposing sanctions, as Guttbinder contends.  Guttbinder first argues that the family court failed to identify the statute under which it was imposing sanctions in the challenged order, and thereby "deprived [him] of the ability to create a record and assert defenses tailored to the statute actually being applied."  This argument is specious.  The family court was not imposing sanctions on its own motion; the family court was ruling on Bayer's request for sanctions, and it was

abundantly clear to all parties that the basis for sanctions was section 271.[6] Bayer specifically referred to section 271 in her filings on December 19, 2024, April 1, 2025, and May 6, 2025. Accordingly, we conclude that Guttbinder had adequate notice of the specific sanctions statute relied upon by Bayer.

Guttbinder next contends that, even if the sanction was ordered under section 271, it is reversible for failure to ensure that it does not impose an unreasonable financial burden. Under section 271, subdivision (a), a court may impose, as a sanction, "an award of attorney's fees and costs on the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." Section 271, subdivision (a), provides that, in making an award, "the court shall take into consideration all evidence concerning the parties' incomes, assets, and liabilities." "Sanctions under section 271 are committed to the discretion of the trial court, and will be reversed on appeal only on a showing of abuse of that discretion, that is 'only if, considering all of the evidence viewed more favorably in its support, and indulging all reasonable inferences in its favor, no judge could reasonably make the order.' [Citations.]" (*Davenport*, *supra*, 194 Cal.App.4th at p. 1524.) Here, Guttbinder simply cites his testimony at the hearing that he had about $20,000 of cash and that his gross monthly income was currently "zero"

---

[6] In the absence of a contrary showing on the record, we make all presumptions in favor of the family court's action (*Jameson, supra,* 5 Cal.5th at p. 609), and, here, we presume that the family court was applying section 271 when it ordered Guttbinder to pay $5,000 in attorney's fees directly to Bayer's counsel's office. Thus, we do not address Guttbinder's arguments that the sanction is also reversible if it is "construed as CCP § 177.5" or "construed as CCP § 128.5." (Bolding omitted.)

because he did event work, had just finished a job, and was "in between jobs." But we cannot say that no judge could reasonably impose $5,000 of sanctions against a party who is between jobs but has $20,000 of cash.[7]

Guttbinder additionally argues that reversal is required because the challenged order "contains no meaningful analysis explaining why this does not impose an unreasonable financial burden." But he cites no authority for the proposition that the order must include such an explanation. In the absence of cogent legal argument supported by citations to authority, we may deem a contention forfeited, and we do so here. (See *Clary v. City of Crescent City* (2017) 11 Cal.App.5th 274, 294 [" ' "This court is not required to discuss or consider points . . . which are not supported by citation to authorities . . . ." ' [Citation] . . . [Appellant] has forfeited the issue"].)

2.    The Letter from Duddy

Guttbinder contends that the family court's "custody/visitation ruling" must be reversed and remanded because the family court violated due process and tainted the evidentiary record by "admitting and relying" on Duddy's letter terminating her services. (Capitalization and bolding omitted.) We need not address whether the family court erred in admitting the letter from Duddy because Guttbinder has failed to carry his "burden of

---

[7] Furthermore, the cases that Guttbinder cites do not persuade us that the $5,000 sanction against Guttbinder imposed an unreasonable financial burden, because none of the cases found sanctions to be unreasonable. (See *Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1157 ["We have considered and rejected [the appellant's] arguments that the amount of sanctions would impose an unreasonable financial burden on her"]; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 292 [concluding that the appellant has not shown that the award was excessive in light of the evidence]; *Davenport, supra,* 194 Cal.App.4th 1507 [no discussion of unreasonable financial burden].)

9

demonstrating prejudicial error." (See *Contra Costa County*, *supra*, 235 Cal.App.4th at p. 925.) In his opening brief, Guttbinder cites only one statement by the family court to support his argument that the family court relied on the letter from Duddy: "[I]t's relevant. So, frankly, I'm glad I saw it." In his reply brief, he additionally refers to the family court's statement that the letter it was talking about was "[t]he letter where she says that she's no longer working with this family and why." The family court appears to have found these statements relevant to Guttbinder's *own* request to remove Duddy as parenting coordinator (which was one of the grounds for his Ex Parte Request for Order to begin with) rather than custody or visitation; the letter from Duddy was relevant because, as the family court noted at the hearing, "she seems to have terminated her services anyway and I can't force her to be in there if she's not being paid and no one's showing up." At the hearing, when the family court explained the reasons for its rulings related to custody and visitation, it did not discuss the Duddy letter at all. Nor did it discuss the Duddy letter in the challenged order, other than noting that Duddy had requested to withdraw from the matter. In the absence of proof that the letter from Duddy "actually figured in the court's decision," we presume that the family court did not err by considering any inadmissible evidence in making its rulings related to custody and visitation. (See *Davenport*, *supra*, 194 Cal.App.4th at p. 1526.)

Guttbinder's reliance on *In re Marriage of Swain* (2018) 21 Cal.App.5th 830, is misplaced. In that case, the former wife filed an income and expense declaration and did not appear at the hearing. (*Id.* at p. 834.) The appellate court concluded that the trial court relied on the former wife's declaration to determine her need, obligations, and assets in the trial court's statement of decision. (*Id.* at pp. 834-835.) The appellate court held that the trial court

10

should not have considered the former wife's declaration because the appellant had no opportunity to cross-examine her about it. (*Id.* at p. 832.) Here, as discussed above, we presume that the family court did not rely on the letter from Duddy in making its rulings related to custody and visitation.

3.    <u>Reassignment</u>

In his opening brief, Guttbinder requested that we direct reassignment of this case to a different judicial officer in the family court. After briefing was complete, we granted Guttbinder's request to take judicial notice of a document showing that the superior court had reassigned this case for all purposes to a different family court judge. The question of reassignment is thus moot, and we will not address it. (See *In re D.P.* (2023) 14 Cal.5th 266, 276 ["A court is tasked with the duty ' "to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions . . . which cannot affect the matter in issue in the case before it." ' [Citation.]"].)

## DISPOSITION

The challenged order is affirmed. Bayer shall recover her costs on appeal.

_____
Miller, J.

WE CONCUR:


_____
Stewart, P. J.


_____
Richman, J.


A175180, *Bayer v. Guttbinder*